J-S09030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| R.L.T., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| L.A.T., | |
| Appellant | No. 1525 WDA 2014 |

Appeal from the Order Entered August 21, 2014
In the Court of Common Pleas of Fayette County
Civil Division at No(s): 1841 OF 2011 G.D.

BEFORE:  FORD ELLIOTT, P.J.E., BOWES, and ALLEN, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 18, 2015**

L.A.T. ("Mother") appeals from the August 21, 2014 order entered following a *de novo* custody hearing.  The order endeavored to address "the issue of primary custody/continuation of the temporary approval of relocation[.]"  ***See*** Trial Court Order, 8/21/14.  As the trial court failed to make the required best-interest considerations pursuant to the Child Custody Act, 23 Pa.C.S. § 5328(a), in awarding physical custody, we reverse the custody order and remand for further proceedings.

As the procedural posture of this matter shapes our disposition, a thorough recitation of the custody dispute is warranted.  Mother and R.L.T. ("Father") married on April 27, 2006, and a daughter, A.T., was born of the marriage during 2009.  The parties separated on March 17, 2011.  Father filed a complaint in divorce five months later.  When Father filed the divorce

complaint he was on active duty in the United States Air Force and stationed in Virginia. As confirmed by Mother's admission in her answer to the complaint, Mother resided at 556 Pearl Street, Brownsville, Fayette County, Pennsylvania. That residence belonged to Father's mother, who allowed Mother and A.T. to live there following the parities' separation.

As Father's divorce complaint included a count for joint custody of A.T., the trial court referred that aspect of the litigation to a custody mediator. The mediation process was resolved with a temporary consent order, which had the stated purpose of stabilizing the custody arrangement. Mother was awarded primary physical custody of A.T., and Father received physical custody between Sunday and Tuesday evenings while he was living in Fayette County on leave from the Air Force. The consent order contemplated that, following Father's expected discharge from active duty during January 2012, Father would seek equally shared physical custody of his daughter.[1]

Following a subsequent mediation, on January 31, 2012, the trial court entered a modified custody consent order, wherein Mother maintained

_____

[1] In her brief, Mother claims that she resided in Farmington, Pennsylvania at this juncture. While not explicitly expressed in the consent order, it is apparent from the location of the child's daycare facility in Farmington and the designated location for the custody exchanges in Uniontown, Pennsylvania, that Mother no longer resided with her mother-in-law in Brownsville. We observe that the three towns are located relatively close together on a northwestern-southeastern axis in Fayette County with Uniontown situated roughly equidistant between the other locations.

primary physical custody and Father exercised physical custody from Thursday afternoon to Sunday morning. Significantly, there is no indication in the consent order that either party had moved since the prior temporary order was entered. Additionally, the order stated that it was the final resolution of the issues referred to the mediator, that no further action would be required of the mediator, and that the parties would comply with the relocation provisions in the Child Custody Act.

Less than one month later, Father filed a petition for *de novo* review.[2] Following an evidentiary hearing, the trial court entered a thorough custody order that awarded shared legal custody and fashioned a custody arrangement granting Mother physical custody of then-three-year-old A.T. between Monday and Wednesday afternoons. Father maintained physical custody between Wednesday and Friday afternoons, and the parties alternated weekend custody between Friday and Monday afternoons. The trial court purposely molded the arrangement so that Mother was granted four additional weekends per year. Additionally, the trial court set forth the custody schedule for major holidays.

---

[2] The request for a *de novo* trial was procedurally improper. While the trial court chastised Father for the misstep and stressed that the correct course to modify an existing custody order was to file a motion for modification and for the referral of a mediator, the trial court scheduled the evidentiary hearing and entered a custody order.

As it relates to the issue that we confront on appeal, paragraph four of the May 2012 custody order provided, in pertinent part, as follows:

> (4) Mother is granted permission to temporarily relocate to Bruceton Mills, West Virginia in her discretion (at least until [A.T.] becomes old enough for public school) if that becomes an option she wishes to exercise. Any other relocation by either party, **including any permanent relocation to Bruceton Mills, West Virginia by Mother**, is subject to the provisions of Pennsylvania statute, and this Court will retain jurisdiction of [A.T.] and this action for that purpose. . . . If both parents act cooperatively, they can jointly choose where [A.T.] attends school. However, neither party has unilateral control as to the best location for [A.T.] to attend school when she becomes of age, and if the parties are unable to agree, the Court will make the best choice from the options available at that time.

Trial Court Order, 5/17/12, at 4-5 (emphasis added).

For the next twenty months, the May 2012 custody order endured the parties' sundry motions for modification, contempt, and special relief. On January 30, 2014, Father filed a petition to modify the May 2012 custody order and a concomitant motion to refer the matter to a custody mediator. Father noted that A.T. was approaching school age and that the custody arrangement based upon Mother's temporary relocation to West Virginia would be impractical once school started.

Following a mediation conference, on June 10, 2014, the trial court entered the mediator's recommended custody order granting shared legal custody and permitting Mother to enroll A.T. in West Virginia. While the recommended order did not confront the relocation issue expressly, the latter provision amounted to a *de facto* ratification of Mother's "temporary

- 4 -

relocation." The order provided that it superseded all prior custody orders and included the boilerplate language that it fully resolved the issues referred to the child custody mediator and that no further proceedings would be scheduled before the mediator except by order of the trial court.

Father exercised his right to appeal the order adopting the mediator's recommendation and to demand a *de novo* hearing before the trial court. During the ensuing evidentiary hearing, Father testified on his own behalf and presented Scott Tracy, PhD, who was qualified as an expert in the field of child counseling. Mother relied upon her own testimony and exhibits. The trial court did not issue its ruling at the close of the *de novo* hearing. Instead, the court took the matter under advisement and on August 21, 2014, the trial court entered the custody order that is the genesis of this timely appeal. The August 21, 2014 order directed that A.T. will attend school in West Virginia during the 2014-2015 school year and awarded "approximately equally divided" physical custody. In subsequent years, the child was ordered to attend school in Pennsylvania. The order did not set forth the current or future custody arrangements. **See** Trial Court Order, 8/21/14, at 1. Instead, after accepting the parties' respective proposed custody schedules, on October 21, 2014, the trial court issued an interim order that provided Mother primary custody of A.T. during the current academic year and granted Father physical custody of his daughter on all but one weekend per month. Additionally, Father was awarded primary custody during the 2015 summer break, with Mother receiving overnight

custody on alternating weekends. *See* Interim Court Order, 10/21/14, at 2-3. The order did not address the prospective arrangement when the child would attend school in Pennsylvania beginning with the 2015-2016 school year.

Essentially, the trial court determined that the June 2014 order, wherein it adopted the mediator's *de facto* ratification of Mother's relocation without reference to paragraph four of the May 17, 2012 custody order, frustrated its intention to have the parties comply with the procedural and substantive aspects of the relocation provisions outlined in the Child Custody Act. The court continued that, based upon the evidence adduced at the hearing,

> Mother's relocation from Brownsville to Farmington to Bruceton Mills does not comply with the statutory requirements set forth in 23 Pa.C.S. § 5337(h)[3] in that it does not currently allow

---

[3] Section 5337(h) of the Child Custody Act enumerates ten factors a court must consider in determining whether to grant a proposed relocation:

(h) Relocation factors.--In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical,

*(Footnote Continued Next Page)*

Father, who exercises shared physical and legal custody, a reasonable opportunity to preserve his long-term relationship with the child. The original temporary approval of relocation was based on factors that either did not exist at all, or that disappeared shortly after the order was entered. Further the relocation currently offers no significant advantages to the child, and the advantages to Mother in the relocation do not outweigh the contrary interests of the Father and the child[.]

*(Footnote Continued)* ———————

educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.
(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

Trial Court Order, 8/21/14, at 2. In its subsequent Rule 1925 opinion, the trial court expounded on its consideration of the relocation factors and stated that the factors that it did not confront explicitly did not make a significant contribution to its decision because they were inapplicable, neutral, or substantially less weighty than the remaining factors that it did address. Noticeably absent from the notes of testimony, trial court order, or the Rule 1925(a) opinion, however, is any indication that, prior to making its award of physical custody, the trial court considered any of the best-interest factors delineated in § 5328(a), which we set forth *infra*.

On appeal, Mother levels the following allegations:

I. Whether the trial court erred or abused its discretion by considering the issue of relocation, when this case did not involve a relocation at all, and the child was not moving a significant distances?

II. Whether [the] trial court erred or abused its discretion by deciding this case under the relocation statute, when the matter before the court was Father's petition for primary physical custody of the minor child, and when Mother did not have notice that relocation would be the subject of the August 18, 2014 hearing.

III. Whether the trial court erred or abused its discretion by making numerous findings of fact and considering additional relocation and custody factors in its [R]ule 1925(a) opinion, when it failed to make such findings and consider all relevant the statutory factors in the August 21, 2014 custody order.

IV. Whether the trial court's findings that Mother's residence does not allow Father to preserve his long term relationship with the minor child, and that Mother's residence offered no significant advantages to the child, are supported by competent evidence.

Mother's brief at 6-7.[4]

Initially, Mother asserts that the trial court erred in framing this case as a custody relocation action rather than a typical dispute concerning the right to exercise primary physical custody. To support this position, Mother invokes our recent holding in **D.K. v. S.P.K.**, 102 A.3d 467, 474 (Pa.Super 2015), wherein we held, *inter alia*, that "where neither parent is relocating, and only the custodial rights of the parties are at issue, section 5337 of the Child Custody Act is not *per se* triggered[,]" and therefore the out-of-town parent seeking primary custody of her child was not required to adhere to the relocation notice procedures outlined in § 5337(c). From this holding, Mother extrapolates that, since she resided in West Virginia for two years prior to the August 2014 custody hearing, she was not seeking to relocate pursuant to the Child Custody Act, and the trial court erred in applying the § 5337(h) relocation factors to determine A.T.'s best interest.

Viewing the proceedings *sub judice* from the standpoint that this case did not implicate any relocation issues whatsoever, Mother continues, in her second argument, that the trial court erred by addressing the relocation

---

[4] Since we reverse and remand, we do not address Mother's final argument assailing aspects of the trial court's findings of fact. However, we reiterate that due to our deferential review of the trial court's factual findings and determinations of weight and credibility, we must accept those findings and determinations that are supported in the certified record by competent evidence. **See D.K. v. S.P.K.**, 102 A.3d 467, 478 (Pa.Super. 2015).

issue without having provided her formal notice that the status of her relocation would be the subject of the custody hearing. In essence, Mother complains that the trial court's failure to advise her, either prior to or during the evidentiary hearing, that relocation would be at issue, was tantamount to a violation of her due process right to notice and the opportunity to be heard.

Mother's third complaint highlights the trial court's failure to address the custody factors enumerated in § 5328(a) relating to the award of any form of custody. She points out that pursuant to prevailing Pennsylvania jurisprudence, the trial court was required to consider the § 5328(a) factors, which it did not, and delineate its assessment of the factors "prior to the deadline by which a litigant must file a notice of appeal." ***See C.B. v. J.B.***, 65 A.3d 946, 955 (Pa.Super. 2013). In sum, Mother asserts that, assuming *arguendo*, Father's petition to modify physical custody subsumed the issues concerning her relocation to West Virginia, the trial court was required to address both the relocation factors under § 5337(h) as well as the best interest factors enumerated in § 5328(a).

Father counters that, since A.T. was school age and his petition concerned her custody during the academic year, the trial court properly confronted the relocation issue pursuant to the terms of the May 2012 order. As it relates to Mother's due process claim, Father posits that, in light of paragraph four of the May 2012 order, Mother had actual notice that her

temporary relocation would be at issue. Finally, Father asserts that the trial court did, in fact, consider all of the relevant statutory best interest factors and delineated its determination in its Rule 1925(a) opinion. He adds that, contrary to Mother's protestations, our holding in *C.B.*, *supra*, is inapplicable herein because Mother did not demonstrate prejudice due to the trial court's failure to state its reasoning prior to the date that she filed the notice of appeal.

Upon review of the parties' arguments, pertinent legal authority, and the certified record, we conclude that the trial court's failure to conduct a thorough analysis of A.T.'s best interests based on the relevant § 5328(a) factors and set forth its assessment pursuant to our holding in *C.B.* is dispositive. Accordingly, for the reasons explained below, we reverse the August 21, 2014 custody order and remand the matter for the trial court to conduct a thorough analysis of the best interests factors, form a custody decision based on those considerations, and explain the reasons for its decision pursuant to the *C.B.* Court's interpretation § 5323(d).

In order to clarify the posture of this case for the parties on remand, as a preliminary matter, we observe that, contrary to Mother's arguments, Father's January 30, 2014 petition to modify the May 2012 custody order clearly implicated Mother's temporary relocation to West Virginia. Most tellingly, the May 2012 order that Father's petition specifically placed at issue explicitly conditioned the temporary relocation upon A.T.'s age. That

order provided unambiguously, "Mother is granted permission to temporarily relocate to Bruceton Mills, West Virginia in her discretion (**at least until [A.T.] becomes old enough for public school**) if that becomes an option she wishes to exercise." Trial Court Order, 5/17/12, at ¶4 (emphasis added). Additionally, the order underscored, "Any other relocation by either party, **including any permanent relocation to Bruceton Mills, West Virginia by Mother**, is subject to the provisions of Pennsylvania statute, and this Court will retain jurisdiction of [A.T.] and this action for that purpose." *Id*. (emphasis added). Furthermore, Father's petition specifically averred, "The minor child will begin primary school on or about August, 2014. [Mother] currently resides in Bruceton Mills, West Virginia as per the temporary permission granted by the court. The current distance between the parties' residence will render the current custody impractical once the child begins primary school." Petition to Modify Custody Order, 1/30/14, at ¶ 3.

Although the language included in both the May 2012 order and Father's petition for modification were clear and unambiguous at that juncture, the mediator overlooked the foregoing provision in issuing a recommended custody order that effectively ratified Mother's relocation by directing that A.T. would attend school in West Virginia. The trial court exacerbated the mediator's misstep by summarily adopting the recommended order and failing to recognize that the order conflicted with

the express terms of its May 2012 order relating to Mother's temporary relocation. However, upon consideration of Father's *de novo* appeal from the implementation of the recommended order, the trial court identified the mistake and endeavored to resolve the issue. Thus, we outright reject Mother's primary argument that this case did not involve relocation.

Mother's assertion overlooks the procedural history and conveniently ignores that, by its terms, the portion of the May 2012 order permitting her to relocate temporarily to West Virginia would be revisited when A.T. was old enough to enroll in public school. Indeed, from Mother's narrow perspective, the only considerations before the trial court at the August 2014 hearing were which parent would exercise physical custody and concomitantly where A.T. would enroll in kindergarten. Thus, ignoring the reality of the May 2012 order, Mother disconnects her temporary relocation to West Virginia from the best-interest determination completely.

Likewise, Mother's reliance upon our holding in **D.K.**, **supra**, for the principle that the relocation provisions were not triggered herein is inapt. Unlike the case at bar, the parties residences in **D.K.** were separated by significant distances **prior** to the custody litigation, and the parties exercised custodial rights pursuant an agreement. The father maintained primary physical custody of the children in Pennsylvania, and the mother had periods of supervised custody in North Carolina. Approximately one year after executing the custody agreement, the mother filed a complaint for primary

physical custody. Following a hearing, the trial court awarded the mother primary custody. On appeal, the father asserted, *inter alia*, that the mother failed to comply with the relocation procedures outlined in § 5337 of the Child Custody Act. He contended that since the children would be displaced to North Carolina if the mother's complaint was successful, she was required to provide him timely notice of her intention to relocate the children to North Carolina. As it relates to the case at bar, we held that the statute anticipates that one of the **parties** would be relocating and that "where neither parent is relocating, and only the custodial rights of the parties are at issue, section 5337 of the Child Custody Act is not *per se* triggered." **D.K. supra** at 474. We continued that, since the mother was not relocating, but only the children would be moving a significant distance based on the custody determination, the mother was not required to comply with the § 5337 notice provisions.

The difference between **D.K.** and the present case is manifest. Herein, Mother did not live in West Virginia when Father initiated the custody dispute. If that were the case, Mother's reliance upon **D.K.** would be sound. In reality, however, Mother lived in Pennsylvania at the outset of this custody litigation and moved to West Virginia under the authority of the trial court's temporary endorsement, which was explicitly conditioned on A.T.'s age. Indeed, the precise element that the **D.K.** Court deemed controlling in that case, *i.e.*, the lack of a relocating party, is absent in the case at bar.

Contrary to Mother's fervent protestations, the record bears out that she is a relocating party. Accordingly, Mother's attempt to invoke **D.K.** as a means to challenge the applicability of § 5337 in this case is unpersuasive.[5]

The next aspect of Mother's argument is dispositive. The crux of this contention is that the trial court erred in failing to address the statutory factors under § 5328(a) and delineate its rationale prior to the date of her notice of appeal. For the following reasons, we agree.

The Child Custody Act enumerates the following factors that a trial court must consider in determining the best interests of a child when awarding any form of custody:

_____

[5] Based upon the express terms of the May 2012 order alerting Mother to the fact that her temporary relocation would be examined when A.T. became school age, Mother can be presumed to have had actual notice that the trial court would address her continued relocation when A.T. became school age. Nevertheless, the trial court violated Mother's due process rights by failing to give her express notice that the evidentiary hearing would encompass her outstanding temporary relocation. The trial court's scheduling orders and hearing notices did not mention relocation expressly. Further, although Father's motion for modification implicitly placed Mother's temporary relocation in dispute, neither the averments therein nor Father's *de novo* appeal from the ensuing order provided specific notice of that issue.

Moreover, the trial court committed reversible error by confronting the relocation issue without the benefit of the parties' evidence and arguments specifically tailored to that issue. As Mother points out, Father's petition sought primary custody and, at the outset of the hearing, the trial court advised the parties that the hearing concerned which state A.T. would enroll in school. The trial court declined to elicit, and the parties failed to adduce, significant evidence that related to the § 5337(h) relocation factors. Indeed, it is apparent from the certified record that, when the trial court addressed the relocation issue, it did so retroactively by gleaning from the record the evidence that it deemed relevant.

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

We recently reiterated the following relevant principles:

When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant Section 5328(a) factors. ***E.D. v. M.P.,*** 33 A.3d 73, 80 (Pa.Super. 2011). "**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. ***E.D., supra*** at 81. The record must be clear on appeal that the trial court considered all the factors. ***Id.***

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen Section 5328 custody factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.,*** 65 A.3d 946, 955 (Pa.Super. 2013), *appeal denied,* ___ Pa. ___, 70 A.3d 808 (2013). Section 5323(d) applies to cases involving custody and relocation. ***A.M.S. v. M.R.C.,*** 70 A.3d 830, 835 (Pa.Super. 2013).

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations."

> ***M.J.M. v. M.L.G.,*** 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied,* __ Pa. __, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V. v. S.T.***, 87 A.3d 818, 822-823 (Pa.Super. 2014).

Pursuant to the foregoing legal authority, the trial court was required consider all of the relevant statutory factors and delineate its assessment of the factors on the record in open court or in a written opinion or order to be entered prior to the time that Mother had to take her appeal. Instantly, however, the trial court did not make any determinations on the record and entered a custody order which only referred to the § 5337(h) relocation factors cursorily and utterly ignored § 5328. Indeed, the sum of court's mandated assessment of the statutory factors consisted of the following passage:

> The above paragraphs of this Order [(relating to Mother's continued temporary relocation for the upcoming school year, A.T.'s enrollment in Brownsville schools for the following school year, and the concomitant physical custody arrangements to effectuate her enrollment)] are based on the Court's finding that Mother's relocation from Brownsville to Farmington to Bruceton Mills does not comply with the statutory requirements set forth in 23 Pa. C.S. A. §5337(h) in that it does not currently allow the Father, who exercises shared physical and legal custody, a reasonable opportunity to preserve his long term relationship with the child. The original temporary approval of relocation was based on factors that either did not exist at all, or that disappeared shortly after the order was entered. Further, the relocation offers no significant advantages to the child, and the advantages to Mother do not outweigh the contrary interests of the Father and the child. Further, while Fathers pre-separation marital misconduct may have provoked an understandable emotional reaction from Mother, as per testimony, it cannot be

considered in this custody proceeding as a valid reason for relocation of the child.

Trial Court Order, 8/21/14, at 2. While the trial court's subsequent Rule 1925(a) opinion expounded upon the relocation factors to some degree, that discussion violated the timing mechanism that we fashioned in *C.B.*, *supra* at 955.[6] Moreover, the trial court's Rule 1925(a) opinion still failed to address the best-interest factors delineated in § 5328. Although some overlap exists between the two sets of statutory considerations, only six of the ten relocation factors identified in § 5337(h) have a corresponding factor in § 5328(a).

In *A.V.*, *supra*, this Court addressed whether the trial court was required to consider the § 5328(a) best-interest factors as well as the relocation factors enumerated in §5337(h) in entering a relocation order that modified the prior physical custody agreement. After reviewing the relevant principles that we iterated *supra*, we held that the trial court erred by failing to apply the § 5328(a) custody factors when making a new award of custody

---

[6] Contrary to Father's understanding of the *C.B.* Court's holding, Mother was not required to establish prejudice in order to obtain relief. In *C.B.*, *supra*, we announced a new interpretation of §5323(d) and declined to remand the matter. We noted the trial court did not have the benefit of our novel perspective when it entered the custody order, that it had complied substantially with the preexisting law, and that the appealing party did not inadvertently forfeit any issues due to the trial court's delay. Instantly, however, the omission is neither justified nor benign. The trial court failed to comply with the ensconced statutory paradigm regarding the determination of a child's best interest.

concomitantly with relocation. We reasoned, "Crucially, the order directly changed Father's physical custody award from 'shared physical custody' to 'partial physical custody.'" *Id*. at 823-824. Likewise, herein, we conclude that, since the court addressed the parties custody rights, the custody order triggered § 5328(a).

This case is dissimilar from the facts we encountered in ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa.Super. 2014), where we addressed a custody order that, *inter alia*, denied a father's request for special relief seeking to change the location of his child's kindergarten. Specifically, the father asked the trial court to approve his choice of school. Following a hearing, the trial court denied the petition for special relief and directed that the child attend the school that the mother preferred. As it relates to the issue that is relevant herein, we determined in ***S.W.D.*** that since the trial court simply decided the school that the child should attend, the court was not required to consider the factors enumerated in § 5328(a) to determine the child's best interest. We explained, "when read as a whole, it is apparent that the § 5328(a) factors were designed to guide the best interest analysis when a trial court is ordering which party has the **right** to a form of custody." ***Id***. at 403 (emphasis in original). However, we concluded that remand was not warranted in that case because the trial court did not alter either parent's form of legal custody. Instead, the court acted as an arbiter and selected the school that the child would attend. We reasoned, "the court's decision

- 20 -

here merely resolved an impasse between the parties who shared the legal right to make this decision. Stated another way, the trial court merely arbitrated a dispute between Mother and Father regarding schooling, instead of granting one of them the right to make that decision." *Id*. at 403.

This case differs from *S.W.D.* in two material ways. First, while the trial court selected the school district that A.T. would attend in the upcoming school years, unlike the factual scenario in *S.W.D.*, where the parties lived relatively close, the court's school selection in the case at bar directly impacted the parties' physical custody arrangement. Indeed, although the trial court indicated a desire to award approximately equally divided custody if the parents are able to provide the necessary transportation, that condition is unlikely to occur where Mother and Father reside approximately forty minutes away from each other. Second, and more importantly, regardless of the nature of the court's decision regarding the school selection, the trial court was required to address the § 5328(a) best-interest factors in resolving Father's petition for modification seeking primary physical custody of his daughter. *See S.W.D.*, *supra* at 406-407 ("By asking the court to ratify the informal change [in the custody order], Father was requesting a modification of physical custody. This compelled the trial court to decide which physical custody arrangement was in Child's best interest, squarely implicating an award of a form of custody under 23 Pa.C.S.A. § 5323(a)."). Instantly, the face of the custody order stated that

- 21 -

it was addressing physical custody as well as Mother's temporary relocation. Accordingly, the trial court was required to comply with § 5328(a) and the litany of cases interpreting that statutory provisions. *Cf., M.O. v. J.T.R.*, 85 A.3d 1058 (Pa.Super. 2014) (where trial court merely modified single discrete and narrow ancillary issue, Child Custody Act did not require court's thorough consideration of custody factors or delineation of its rationale).

Finally, we observe that Father's brief highlights random references in the trial court's opinion and pairs those statements with seven of the seventeen enumerated best-interest factors. This attempt to cobble together an implicit § 5328(a) analysis on the trial court's behalf is unavailing. It is beyond argument that the trial court was statutorily mandated to conduct a thorough analysis of all of the factors listed in § 5328(a) and deliver its assessment of those factors within the stated time frame. The trial court failed to satisfy this mandate.

Order reversed. Case remanded for the trial court to perform a best interests analysis considering all of the § 5328(a) factors. Jurisdiction relinquished.

Allen, J. joins.

Ford Elliott, P.J.E. concurs in the result.

Judgment Entered.

- 22 -

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/18/2015</u>